IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT RUTLEDGE, M.D.,           )
                                 )
              Plaintiff,         )
                                 )
     v.                          )     Civil Action No. 1:07cv00539
                                 )
HIGH POINT REGIONAL HEALTH       )
SYSTEM, JAMES DASHER, M.D.,      )
and THOMAS WALSH, M.D.,          )
                                 )
              Defendants.        )

**MEMORANDUM OPINION AND ORDER**

SCHROEDER, District Judge

    This action is before the court on Defendants' respective motions to dismiss (Docs. 17 & 20), pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The sole basis of the motions is that Count II of Plaintiff's Amended Complaint, alleging a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 (2007),[1] is preempted by the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. §§ 101-1332 (2005).  For the reasons set forth herein, the motions will be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    The allegations of the Amended Complaint are construed in the light most favorable to Plaintiff, the non-moving party.

---

    [1]  In the Amended Complaint, Plaintiff alleges unfair and deceptive trade practices under the UDTPA and the similar laws of twelve other states.  (Doc. 15 ¶ 38)  Plaintiff now stipulates that Count II rests on the UDTPA only.  (Doc. 54)

Robert Rutledge, M.D. ("Plaintiff"), is a physician who resides in Clark County, Nevada. (Doc. 15 ¶ 8) In the late 1990s, he developed a surgical weight loss procedure, known as the Mini Gastric Bypass ("MGB"), as well as materials to be used in conjunction with the MGB procedure. (Id. ¶¶ 8, 12, 13-14) Subsequently, Plaintiff obtained copyrights for these materials, including documents he identifies as a "Patient Information Form," an "MGB Information Manual" (which, in turn, includes a "Patient Consent Form") and a "Patient Manual." (Id. ¶¶ 8, 14, 22, 23, 31, 40, Exs. F-H, K) Through a management services organization, the Center of Excellence for Laparoscopic Obesity Surgery ("CELOS"), Plaintiff contractually authorizes other physicians to use the copyrighted materials. (Id. ¶¶ 8, 15-16)

Defendants James Dasher, M.D., and Thomas Walsh, M.D., are physicians who reside in Guilford County, North Carolina, and worked for Cornerstone Health Care at all times relevant to this lawsuit. (Id. ¶¶ 10-11, 15) Pursuant to an agreement between CELOS and Cornerstone Health Care, Drs. Dasher and Walsh had access to the copyrighted materials and performed the MGB procedure at Defendant High Point Regional Health System ("High Point Regional") from 2004 until 2006. (Id. ¶¶ 10, 11, 15-16) Although the agreement terminated in May 2006, at which time Plaintiff alleges the authorization to use the copyrighted materials ended, Drs.

2

Dasher and Walsh continue to use them and perform the surgery. (Id. ¶¶ 10, 11, 17-19)

Plaintiff alleges that Dr. Dasher, Dr. Walsh and High Point Regional (collectively, "Defendants") are infringing upon the copyrights by reproducing, distributing and displaying Plaintiff's copyrighted materials for commercial purposes on High Point Regional's Internet website. (Id. ¶¶ 1, 6, 22, 23) In specific, Plaintiff claims that Defendants' "Overview of the Mini Gastric Bypass," "Mini Gastric Bypass — Patient Information Form" and "Operative Treatment Consent Agreement," which Defendants hold out as their own, constitute nearly identical copies of Plaintiff's copyrighted materials, with trivial changes. (Id. ¶¶ 23-25, 31-32, Exs. C-E) Plaintiff also claims that Defendants are displaying, reproducing and distributing Plaintiff's Patient Manual in its original, unaltered form without permission. (Id. ¶ 40) The copyrighted materials are also allegedly being downloaded from the Internet and used by Defendants, other physicians, staff and patients. (Id. ¶ 22)

Plaintiff sent cease and desist letters to Defendants on January 10, 2007, although the copyrighted materials allegedly remain available on the website. (Id. ¶¶ 27, 28) Plaintiff claims that the availability of these materials will cause confusion,

3

deceive consumers and the public, and dilute and adversely affect his goodwill and reputation. (Id. ¶ 29)

Plaintiff's Amended Complaint alleges two causes of action: copyright infringement under the Copyright Act; and unfair and deceptive trade practices under the UDTPA. (Id. ¶¶ 30-41) Plaintiff sought, but withdrew, a request for a preliminary injunction against Defendants' reproduction, distribution and display of the copyrighted materials. (Compare Doc. 1 with Doc. 15) Defendants deny all material allegations. (Docs. 16 & 19) Defendant High Point Regional also counterclaims against Plaintiff, alleging the materials are not protected under the Copyright Act and requesting relief under several theories. (Doc. 47, Ex. A, at 41-46)

## II. DISCUSSION

### A. Standard of Review

Defendants move to dismiss Count II of the Amended Complaint, which alleges unfair and deceptive trade practices under North Carolina's UDTPA, on the grounds that this state law claim is preempted by the Copyright Act, 17 U.S.C. § 301(a). (Docs. 17 & 20) The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,

4

952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." _Erickson v. Pardus_, 127 S. Ct. 2197, 2200 (2007). Although the complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests," _id._, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Bell Atl. Co. v. Twombly_, 127 S. Ct. 1955, 1964-65 (2007).

**B. Preemption**

Through its authority under the Supremacy Clause, U.S. Const. art. VI, cl. 2, Congress has preempted all state law rights that are equivalent to those protected under federal copyright law. 17 U.S.C. § 301(a). Section 301(a) of the Copyright Act provides that

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

_Id._ Thus, a state law claim is preempted if (1) the work is "within the subject matter of copyright;" and (2) the state law creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." _Id._;

5

see <u>United States</u> *ex rel.* <u>Berge v. Bd. of Trustees of the Univ. of Ala.</u>, 104 F.3d 1453, 1463 (4th Cir. 1997); <u>Rosciszewski v. Arete Assocs., Inc.</u>, 1 F.3d 225, 229 (4th Cir. 1993) (preempting Virginia Computer Crimes Act claim).  The scope of section 301(a) is extensive, such that the "shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection."  <u>Berge</u>, 104 F.3d at 1463.

### 1.   Subject Matter of Copyright

For purposes of these motions, the parties agree that the copyrighted materials satisfy the first requirement.  (Doc. 15 ¶ 8; Doc. 18 at 3; Doc. 21 at 1)  In the Amended Complaint, Plaintiff claims to have a valid copyright in the materials used in conjunction with the MGB procedure.  (Doc. 15 ¶¶ 8, 14, 22, 23, 31, 40, Exs. F-H)  Thus, the copyrighted materials fall "within the subject matter of copyright."

### 2.   Equivalent Rights

The parties dispute — and the question to be answered is — whether the UDTPA satisfies the second requirement by creating legal or equitable rights that are not "equivalent to" the rights protected under federal copyright law.  The Copyright Act, 17 U.S.C. § 106, grants a copyright owner the exclusive right to "(1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of the work, (4) perform the work publicly,

6

and (5) display the work publicly." <u>Trandes Corp. v. Guy F. Atkinson Co.</u>, 996 F.2d 655, 659 (4th Cir. 1993).

To ascertain if this second requirement is satisfied, the Fourth Circuit applies the "extra element" test:

> State-law claims that infringe one of the exclusive rights contained in § 106 are preempted by § 301(a) if the right defined by state law "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" . . . However, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption," provided that "'the extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'"

<u>Rosciszewski</u>, 1 F.3d at 229-30 (internal citations omitted). This test comports with congressional intent. H.R. Rep. No. 94-1476, at 132, <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659, 5748 ("[T]he general laws of defamation and fraud[] would remain unaffected as long as the causes of action contain elements . . . that are different in kind from copyright infringement."). In short, the Copyright Act preempts state law claims that lack an extra element making them "*qualitatively* different from a copyright infringement claim." <u>Rosciszewski</u>, 1 F.3d at 230 (internal quotation marks and citation omitted).

Common examples of extra elements in unfair competition claims that typically avoid preemption include "breach of fiduciary duty, breach of a confidential relationship, and palming off of the

7

defendant's products as those of the plaintiff's." <u>Old South Home Co. v. Keystone Realty Group, Inc.</u>, 233 F. Supp. 2d 734, 737 (M.D.N.C. 2002) (quoting Kindergartners Count, Inc. v. Demoulin, 171 F. Supp. 2d 1183, 1191 (D. Kan. 2001)).  Where courts have found an extra element sufficient to avoid preemption in this context, the record frequently, but not always, reflects a separate cause of action alleging the additional claim (and thus elements) upon which the unfair competition claim is predicated.[2]  <u>E.g.</u>, <u>Trandes Corp.</u>, 996 F.2d at 660 (finding no preemption of Maryland Uniform Trade Secrets Act claim that included an extra element of breach of trust or confidence); <u>Baldine v. Furniture Comfort Corp.</u>, 956 F. Supp. 580, 587 (M.D.N.C. 1996) (finding separate fraud claim upon which false representation for UDTPA claim rested); <u>Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.</u>, 243 F. Supp. 2d 444, 449-50 (M.D.N.C. 2003) (preempting UDTPA and distinguishing case where fraud alleged separately); <u>Hayes v. Ja Rule</u>, No. 1:03CV1196, 2005 U.S. Dist. LEXIS 37848, at *43-44 (M.D.N.C. Aug. 19, 2005) (preempting UDTPA claim to the extent it relies on allegations of copyright infringement, while noting no preemption to the extent

---

[2]  This is likely due to the fact that while proof of fraud constitutes a UDTPA claim as a matter of law, fraud need not be alleged to state a prima facie case.  <u>Hardy v. Toler</u>, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975).

UDTPA claim relies on a fraud claim or a false designation of origin or false advertising claim under the Lanham Act).

In applying the extra element test, the Fourth Circuit has declared that courts should compare the "required" or "necessary" legal elements of the respective causes of action. Rosciszewski, 1 F.3d at 229-30; Trandes Corp., 996 F.2d at 659-60; Iconbazaar, L.L.C. v. America Online, Inc., 308 F. Supp. 2d 630, 637 (M.D.N.C. 2004). The Fourth Circuit has cautioned that "[t]o determine whether a particular cause of action involves rights equivalent to those set forth in § 106, the elements of the causes of action should be compared, not the facts pled to prove them." Trandes Corp., 996 F.2d at 659 (characterizing the analysis of alleged facts as the "wrong approach").

Despite setting forth these standards, even the Fourth Circuit has on occasion found that determining equivalency solely through the application of the formalistic "required" elements analysis is sometimes easier said than done. Whereas the presence of an extra required legal element makes it likely in the vast majority of cases that the state law claim is qualitatively different from a Copyright Act claim, the converse (especially under the UDTPA's broad scope) is not necessarily true. In order to determine whether the state law cause of action differs qualitatively from a Copyright Act claim, the ultimate touchstone of the statute, the

9

court has reverted to examining the allegations underlying the state law cause of action. <u>Berge</u>, 104 F.3d at 1463; <u>Rosciszewski</u>, 1 F.3d at 230.  Other trial courts in our circuit have done so as well.  <u>Hayes</u>, 2005 U.S. Dist. LEXIS 37848, at *43-44; <u>Collezione</u>, 243 F. Supp. 2d at 449-50; <u>Old South Home</u>, 233 F. Supp. 2d at 737-39; <u>Baldine</u>, 956 F. Supp. at 587-88; <u>Innovative Med. Prods., Inc. v. Felmet</u>, 472 F. Supp. 2d 678, 683-84 (M.D.N.C. 2006) (dicta); <u>see also Stromback v. New Line Cinema</u>, 384 F.3d 283, 303-06 (6th Cir. 2004), <u>reh'g denied</u>, 2004 U.S. App. LEXIS 21704 (6th Cir. Oct. 8, 2004).  This secondary level of analysis often occurs in the context of claims under the UDTPA, which regulates "unfair" and "deceptive" conduct broadly and whose scope depends on the conduct alleged to constitute the violation.  This dual level of analysis appears to be more thorough, particularly in a UDTPA case, and will be followed here.

### a.  Required Elements

The Copyright Act requires a party to establish (1) ownership of a valid copyright and (2) encroachment on one of the exclusive section 106 rights conferred by the copyright.  <u>Avtec Sys., Inc. v. Peiffer</u>, 21 F.3d 568, 571 (4th Cir. 1994).  By comparison, to state a claim under the UDTPA a party must establish that (1) the defendant engaged in an "unfair" or "deceptive" act or practice; (2) the act was in or affecting commerce; and (3) the act injured

10

the plaintiff. N.C. Gen. Stat. § 75.1-1; <u>Dalton v. Camp</u>, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). These three elements are the only ones *required* to state a claim under the UDTPA, even though a party might allege additional aspects of unfairness or deception as part of a particular claim. Under a strict application of the extra element test, therefore, the UDTPA claim would be preempted by the Copyright Act, because the UDTPA does not *require* an element in addition to those necessary to constitute a prima facie claim of copyright infringement. <u>Rosciszewski</u>, 1 F.3d at 229-30 (analyzing the "required" and "necessary" elements of respective causes of action); <u>Iconbazaar</u>, 308 F. Supp. 2d at 637 (preempting UDTPA claim because no extra element is required).

### b. Plaintiff's Claim of Extra Elements

Plaintiff argues that he has alleged extra elements of "misrepresentation" and "deception" in his UDTPA claim that are distinct from, and thus not equivalent to, the exclusive rights protected by the Copyright Act. Plaintiff bases these allegations on several acts of misconduct: (1) misrepresentation of the copyrighted materials as Defendants' own; (2) alteration of his copyrighted materials; (3) surreptitious posting of his original, unaltered copyrighted materials on the Internet; and (4) unauthorized use of his copyrighted materials.

11

To be sure, these allegations are not required or necessary elements of a UDTPA claim; rather, they are allegations of fact embellishing on the nature of the alleged "unfairness" or "deception." See, e.g., Peterson v. Bozzano (*In re Bozzano*), 183 B. R. 735, 738 (Bankr. M.D.N.C. 1995) (stating that fraud, bad faith and intentional misrepresentations are not required for prima facie UDTPA claim); Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (holding that acts are unfair if they offend public policy or are immoral, unethical, or substantially injurious to consumers and are deceptive if they have the capacity to deceive). Under the UDTPA, whether such allegations constitute an unfair or deceptive practice is a question of law for the court. Walker v. Branch Banking & Trust Co., 133 N.C. App. 580, 584, 515 S.E.2d 727, 730 (1999) (holding plaintiff's forecast of evidence insufficient as matter of law to establish UDTPA claim).

Because of the sweeping breadth of a UDTPA claim, it is possible for the claim to rest on conduct apart from that comprising the Copyright Act claim. Plaintiff's extra allegations may save his UDTPA claim from preemption only if they independently support it such that the claim is qualitatively different from a Copyright Act violation. Plaintiff cannot create an extra element to avoid preemption merely by predicating a UDTPA claim on the same actions giving rise to the copyright infringement claim. Hayes,

2005 U.S. Dist. LEXIS, at *43-44; Collezione, 243 F. Supp. 2d at 450; see Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 443-46 (M.D.N.C. 2005) (preempting breach of contract, conversion and recovery of stolen property claims as reiterations of the copyright infringement claim); Baldine, 956 F. Supp. at 587; Berge, 104 F.3d at 1464 n.4. More to the point, allegations of what constitutes "unfairness" and "deception" to support a UDTPA claim must rest on sufficient alleged misconduct separate from, and not controlled by, the Copyright Act, in order to survive.

In Plaintiff's case, he neither has a free-standing cause of action for misrepresentation upon which to rest the UDTPA claim, nor are the acts upon which he predicates his UDTPA claim different from those giving rise to the Copyright Act claim such that the UDTPA claim would be qualitatively different from the Copyright Act claim. Thus, the UDTPA claim is preempted.

### (1) Misrepresentation

Plaintiff relies on a treatise and two cases to support his contention that "misrepresentation" and "deception" are extra elements of a UDTPA claim. (Doc. 23 at 4; Doc. 26 at 6) In particular, Plaintiff quotes Nimmer on Copyright as stating:

> "[C]rucial to liability under a *deceptive trade practices* cause of action is the element of misrepresentation or deception, *which is no part of a cause of action for copyright infringement*. Thus, there is no pre-emption of

13

> the state law of fraud, nor of the state law of unfair
> competition . . . ."

(Doc. 23 at 4 (quoting 1 Nimmer on Copyright § 1.01[B][1][e]); Doc. 26 at 6 (same))  But this statement provides no support for Plaintiff's contention because (1) he has not alleged a claim for fraud, and (2) his quotation is unfortunately selective, omitting the final portion that restricts the applicability of the statement to "the state law of unfair competition *of the 'passing off' variety*," which he fails to demonstrate here.  1-1 Nimmer on Copyright § 1.01[B][1][e] (emphasis added).

Here, Plaintiff's claim of misrepresentation rests on nothing more than the natural consequences of a Copyright Act violation. (Doc. 15 ¶¶ 38, 40; Doc. 23 at 1, 2, 3, 5, 9 n.1; Doc. 26 at 2, 3, 7, 8, 13, 14)  Absent is any allegation that any Defendant made any separate statement or half-truth, commonly the basis of a misrepresentation claim.  The claim rests rather on the reproduction, display and distribution of the allegedly protected materials.  Any claimed confusion, therefore, arises solely as a function of the alleged infringement. <u>Patsy Aiken Designs, Inc. v. Baby Togs, Inc.</u>, 701 F. Supp. 108, 112 (E.D.N.C. 1988) (finding none beyond "that confusion which arises from the mere act of copying"); <u>Old South Home</u>, 233 F. Supp. 2d at 737-38.

Morever, although Plaintiff characterizes Defendants' alleged misrepresentation of his copyrighted materials as their own as

14

"passing off" (Doc. 23 at 9 n.1), it is instead more properly a form of "reverse passing off." "Passing off," also known as "palming off," occurs when a defendant misrepresents its products as those of the *plaintiff*. <u>Felmet</u>, 472 F. Supp. 2d at 683-84. By contrast, "reverse passing off" (also "reverse palming off") occurs either (1) "when the wrong doer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer," or (2) "when the wrongdoer . . . removes or otherwise obliterates the name of the manufacturer or source and sells the product in an unbranded state." <u>Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc.</u>, 180 F.3d 583, 591 n.4 (4th Cir. 1999) (internal quotation marks and citation omitted). Here Plaintiff alleges that Defendants have represented his copyrighted materials to the public *as their own*, which is a classic case of reverse passing off.

When predicated on the facts underlying a claim of copyright infringement, reverse passing off fails to constitute the extra element necessary to avoid preemption by the Copyright Act. Although the Fourth Circuit does not appear to have specifically addressed this issue,[3] the Copyright Act routinely preempts such claims of "reverse passing off" brought under state unfair and

<hr>

[3] In <u>Berge</u>, the court did note that claims of "plagiarism and lack of attribution can only amount to, indeed, are tantamount to, a claim of copyright infringement." 104 F.3d at 1464.

15

deceptive trade practices statutes.[4] The state law merely duplicates the copyright owner's exclusive rights to reproduce and distribute. 17 U.S.C. § 106(1), (3). Thus, in this context, reverse passing off is nothing more than a "disguised copyright claim," 1-1 Nimmer on Copyright § 1.01[B][1][e], and is preempted.

The cases relied on by Plaintiff do not help him. For example, <u>Valente-Kritzer Video v. Pinckney</u>, 881 F.2d 772, 776 (9th Cir. 1989), involved "misrepresentation" as a necessary element of a pleaded common law fraud claim and did not feature an unfair or deceptive trade practice claim. In <u>Firoozye v. Earthlink Network</u>, 153 F. Supp. 2d 1115, 1128, 1131 (N.D. Cal. 2001), preemption was avoided because the unfair or deceptive trade practice claim was predicated on separate causes of action for intentional

---

[4]    Courts nationwide recognize that the Copyright Act preempts claims of "reverse passing off" brought under state laws governing unfair and deceptive trade practices. <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1213 (9th Cir. 1998); <u>Kregos v. Associated Press</u>, 3 F.3d 656, 666 (2d Cir. 1993); <u>Patriot Homes, Inc. v. Forest River Hous., Inc.</u>, 489 F. Supp. 2d 865, 875 (D. Ind. 2007); <u>Sivak v. Versen</u>, No. 06cv0416-LAB (WMc), 2007 U.S. Dist. LEXIS 22430, at *23-24 (S.D. Cal. Mar. 27, 2007); <u>Integrative Nutrition, Inc. v. Academy of Healing Nutrition</u>, 476 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2007); <u>Daley v. Firetree, Ltd.</u>, No. 4:CV-04-2213, 2006 U.S. Dist. LEXIS 4061, at *10-13 (M.D. Pa. Jan. 19, 2006); <u>Aagard v. Palomar Builders, Inc.</u>, 344 F. Supp. 2d 1211, 1218 (E.D. Cal. 2004); <u>Schiffer Publ'g, Ltd. v. Chronicle Books, LLC</u>, 350 F. Supp. 2d 613, 619-20 (E.D. Pa. 2004); <u>Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.</u>, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002); <u>CoStar Group Inc. v. Loopnet, Inc.</u>, 164 F. Supp. 2d 688, 714 (D. Md. 2001), <u>aff'd</u>, 2004 U.S. App. LEXIS 12123 (4th Cir. June 21, 2004); <u>Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of North Am.</u>, 81 F. Supp. 2d 70, 73-74 (D.D.C. 2000); <u>Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.</u>, No. 98-8122-CIV-RYSKAMP, 1998 U.S. Dist. LEXIS 11345, at *12-13 (S.D. Fla. June 18, 1998); <u>Xerox Corp. v. Apple Computer, Inc.</u>, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990).

misrepresentation and misappropriation of trade secrets, thus clearly providing the extra element within those causes of action. Finally, Plaintiff places too much reliance on <u>Felmet</u>, which addressed the extra element test in *dicta* and, unlike this action, involved an additional allegation of passing off. <u>Felmet</u>, 472 F. Supp. 2d at 682, 683-84.

Thus, Plaintiff's allegations do not provide an extra element or independent basis to protect the UDTPA claim from preemption. To hold otherwise would vitiate the preemption intended by Congress.

### (2) Alteration of Copyrighted Materials

Plaintiff alleges that Defendants altered his copyrighted materials, and he attaches copies of the allegedly offending materials to his Amended Complaint. (Doc. 15 ¶¶ 23-25, 31-32, Exs. C-E; Doc. 23 at 1, 2, 5; Doc. 26 at 1, 2, 3, 12, 13, 14) Although Defendants complain that Plaintiff fails to identify this allegation specifically within his UDTPA claim, the claim is properly before the court because he elsewhere states that such alterations are likely to cause deception (Doc. 15 ¶¶ 23-25, 29) and incorporates those statements into Count II (<u>id.</u> ¶ 37).

The Copyright Act protects the exclusive right of copyright owners "to reproduce copyrighted work" and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1), (2).

17

To state a claim for reproduction or adaptation, a plaintiff must demonstrate that the defendant copied the original elements of the copyrighted material. _Feist Publ'ns v. Rural Tel. Serv. Co._, 499 U.S. 340, 361 (1991). A plaintiff "may create a presumption of copying by . . . establishing that the defendant had access to the copyrighted work and that the defendant's work is 'substantially similar' to the protected material." _Lyons P'ship, L.P. v. Morris Costumes, Inc._, 243 F.3d 789, 801 (4th Cir. 2001).

Plaintiff argues that Defendants' materials bear a "substantial similarity" to the copyrighted materials. (Doc. 15 ¶¶ 24, 32) Plaintiff also suggests that Defendants "copied" their materials from the original copyrighted materials, adding only minimal or trivial information. (_Id._ ¶¶ 24-25, 31) In the absence of any other allegation of wrongdoing, any deception arising from these alleged alterations would be no more than that flowing naturally from the copyright infringement itself. Thus, this allegation does not save the UDTPA from the Copyright Act's preemptive effect.

### (3) Posting Copyrighted Materials on the Internet

Plaintiff also contends that Defendants surreptitiously posted his original, unaltered copyrighted works on the Internet. (_Id._ ¶¶ 1, 6, 22, 23, 40; Doc. 23 at 5, 7, 8; Doc. 26 at 3, 8, 12, 13) Defendants argue that Plaintiff failed to raise this claim until

18

the briefs in opposition to the motions to dismiss and, thus, it is not properly before the court. (Doc. 25 at 2-3; Doc. 27 at 1-3) Although Plaintiff raised this claim late, a liberal construction of the Amended Complaint reveals that he has "give[n] the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (internal quotation marks and citation omitted). In the Amended Complaint, Plaintiff alleges that Defendants reproduce, distribute, and/or display the copyrighted materials on their website. (Doc. 15 ¶¶ 1, 6, 22) Count II specifically refers to Defendants' display of the Patient Manual on High Point Regional's website. (Id. ¶ 40) Plaintiff further alleges that the posting of these materials "is likely to . . . deceive consumers and the public." (Id. ¶¶ 29, 37) These allegations sufficiently put Defendants on notice that the act of posting the copyrighted materials was allegedly deceptive.

The posting of copyrighted materials on the Internet, as asserted here, alleges no more than a copyright violation. The Copyright Act already protects the exclusive right to reproduce, display and distribute copyrighted materials over the Internet. 17 U.S.C. § 106(1), (3), (5); see New York Times Co. v. Tasini, 533 U.S. 483, 488 (2001); Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 635 (E.D. Pa. 2007); Advance Magazine Publishers Inc. v. Leach, 466 F. Supp. 2d

19

628, 637-38 (D. Md. 2006). Based on the allegations of the Amended Complaint, any deception could only be a direct result of the alleged copyright infringement and would not constitute an extra element of the UDTPA claim. Thus, these allegations do not escape preemption.

### (4) Unauthorized Use

Plaintiff finally alleges that Defendants "used" his copyrighted materials without authorization. (Doc. 15 ¶ 41) In particular, Plaintiff accuses Defendants of (1) using a verbatim *copy* of the copyrighted materials (Doc. 23 at 5, 6, 8, 9 n.1; Doc. 26 at 3, 7, 12, 13); (2) using the MGB Information Manual and other materials on the website[5] (Doc. 15 ¶¶ 22, 23-24; Doc. 23 at 5, 9 n.1; Doc. 26 at 7); (3) using proprietary materials "in advertising their ability to perform the MGB" procedure (Doc. 15 ¶ 33); and (4) allowing other physicians, staff and patients to use the MGB Information Manual and other materials (id. ¶¶ 22, 23, 33; Doc. 23 at 5, 6; Doc. 26 at 7).

As with the "surreptitious posting" allegation, Defendants argue that this claim was not raised until the briefs in opposition and, thus, is not properly before the court. (Doc. 25 at 1-3; Doc.

---

[5] Although Plaintiff alleges that Defendants "use the original copy of Dr. Rutledge's documents on their website" (Doc. 23 at 9 n.1), the posting of documents to a website necessarily involves the making of a digital copy in violation of the exclusive right of reproduction.

20

27 at 2-3) Although Plaintiff waited until the briefs in opposition to allege that the use of the copyrighted materials would misrepresent the relationship between himself and the Defendants (Doc. 23 at 7), the Amended Complaint contains sufficient information to give Defendants fair notice of this claim under the liberal pleading requirements. <u>Erickson</u>, 127 S. Ct. at 2200. In the Amended Complaint, Plaintiff repeatedly refers to the unauthorized use of the copyrighted materials.[6] (Doc. 15 ¶¶ 18, 22, 23, 33, 41) Plaintiff further alleges that this conduct "is likely to . . . deceive consumers and the public." (<u>Id.</u> ¶ 29) These allegations were incorporated into Count II of the Amended Complaint (<u>id.</u> ¶ 37), and Defendants were fairly on notice of them.

This claim fails to establish an extra element upon which to base a UDTPA cause of action. In all but one category, the "unauthorized use" consists of nothing more than reproduction, distribution and display of materials allegedly protected under the Copyright Act and therefore cannot provide a separate element to avoid preemption. In the one category where Plaintiff alleges mere use of Plaintiff's materials by Defendants to perform medical

---

[6] Defendants Dasher and Walsh argue that Plaintiff "implicitly concedes" that he cannot satisfy the extra element test for all the copyrighted documents because the brief mentions only the MGB Information Manual. (Doc. 25 at 2 n.1) But the Amended Complaint clearly refers to the "unauthorized use" of the Patient Information Form, MGB Information Manual, Patient Consent Form (Doc. 15 ¶¶ 22-23) and "materials" (<u>id.</u> ¶¶ 33, 41).

21

treatment, such activity is not protected by the Copyright Act, which protects the expression of ideas but not the ideas themselves. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"); <u>Papa John's Int'l, Inc. v. Rezko</u>, 446 F. Supp. 2d 801, 810 (N.D. Ill. 2006) (rejecting "unauthorized use" as protected under the Copyright Act). If the alleged use breaches a contractual obligation between the parties[7] or is based on a claim of wrongfully obtaining or failing to return the materials that is rooted in some other legal basis, it is not alleged in the Amended Complaint and will not be presumed here. In the absence of such allegations, the court will not conclude that the use and advancement of scientific ideas which remain publicly available and which Congress encouraged through exemption from the Copyright Act should constitute the basis for a claim under the UDTPA. <u>Feist</u>, 499 U.S. at 349-50 (noting the "very object" of the Copyright Act "would be frustrated if the knowledge could not be used without

---

[7] A breach of contract, even if intentional, is insufficiently unfair or deceptive in the absence of substantial aggravating circumstances to constitute a UDTPA violation. <u>Canady v. Crestar Mortgage Corp.</u>, 109 F.3d 969, 975 (4th Cir. 1997).

22

incurring the guilt of piracy"); <u>SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.</u>, 455 F. Supp. 2d 1347, 1361-62 (N.D. Ga. 2006) (holding that party may apply the copyrighted method to its business but cannot copy and disseminate the expression of that method). Thus, these allegations do not save Plaintiff's UDTPA claim.

In the end, Plaintiff's first sentence of the Amended Complaint accurately characterizes this lawsuit: "This is an action for copyright infringement." (Doc. 15 ¶ 1) Because it is so, the Copyright Act preempts Count II.

## III. CONCLUSION

NOW THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:

1.    The Motion to Dismiss of Defendants Dasher and Walsh under Rule 12(b)(6), Fed. R. Civ. P. (Doc. 17), is GRANTED, and Count II of the Amended Complaint is DISMISSED, WITH PREJUDICE, against them;

2.    The Motion to Dismiss of Defendant High Point Regional under Rule 12(b)(6), Fed. R. Civ. P. (Doc. 20), is GRANTED, and Count II of the Amended Complaint is DISMISSED, WITH PREJUDICE, against it.

/s/ Thomas D. Schroeder
United States District Judge

Dated: May 6, 2008

23